THERESA DARIENZO et al., Plaintiffs, v WISE SHOE STORES, INC. et al., Defendants and Third-Party Plaintiffs-Respondents, et al., Defendant; SELBERN SHOE COMPANY, INC., Third-Party Defendant-Appellant.

Second Department, May 12, 1980

APPEARANCES OF COUNSEL

*Benjamin Mandelker* for appellant.

*Benjamin Goldstein & Richard M. Goldstein (Michael Majewski* and *Joseph D. Ahearn* of counsel), for Wise Shoe Stores, Inc., respondent.

*Pizzitola & DiBlasi (Michael Wolpinsky* and *Vincent A. DiBlasi* of counsel), for Gutman-Kesslyn Shoes, Inc., respondent.

## OPINION OF THE COURT

RABIN, J.

Theresa Darienzo sustained personal injuries on May 20, 1968 when the high heel of her left shoe separated from the shank causing her to fall from the platform of an elevated train station onto the tracks below. Claiming negligence and breach of warranty, Mrs. Darienzo and her husband subsequently brought suit against, *inter alia,* Wise Shoe Stores, Inc. (Wise), the alleged retailer, and Gutman-Kesslyn Shoes, Inc. (Gutman), the alleged manufacturer and distributor of the shoes. Wise and Gutman then commenced third-party actions against appellant Selbern Shoe Company, Inc. (Selbern), claiming that Selbern was the actual manufacturer of the

allegedly defective shoes. The instant appeal is limited to review of the denial of Selbern's motions to dismiss the third-party complaints for lack of in personam jurisdiction (CPLR 3211, subd [a], par 8). There should be an affirmance.

At issue is the applicability of, *inter alia,* CPLR 302 (subd [a], par 3, cl [ii]), which provides that "a court may exercise personal jurisdiction over any non-domiciliary * * * who in person or through an agent * * * commits a tortious act without the state causing injury * * * within the state * * * if he * * * expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce".* Implicit in this determination is an evaluation of what contacts Selbern has with New York.

Selbern is a New Hampshire corporation which is neither licensed nor authorized to do business in New York State (see Business Corporation Law, § 1301 *et seq.).* Since 1967, Selbern's sole business has been the manufacture of shoes, 99% of which enter interstate commerce F. O. B. Boston. In 1968, the year of the accident, Selbern manufactured 558,684 pairs of shoes with an approximate value of $1,859,000. Production and value increased steadily through 1971 when Selbern produced 747,583 pairs of shoes valued at approximately $3,199,100. In 1974, when the subject third-party actions were commenced, Selbern manufactured approximately 498,620 pairs of shoes valued at approximately $2,858,600. More generally, in the eight-year period between 1967-1974, Selbern manufactured and sold approximately 4,394,726 pairs of shoes which had an aggregate value of $18,966,600. Throughout this period, approximately 5% of Selbern's product reached retailers located in New York State for purposes of sale to the general public. It is alleged that the defective shoe which proximately caused Mrs. Darienzo to sustain injuries was manufactured by Selbern as part of a lot containing 1,432

---

* Although Selbern argues, *inter alia,* that on the facts of this case, there are insufficient minimum contacts to satisfy the jurisdictional requisites of due process (see *International Shoe Co. v Washington,* 326 US 310; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286), no express challenge has been made to the constitutionality of CPLR 302 (subd [a], par 3, cl [ii]). Consequently, we do not reach such issue. We further note that in a recent decision, the Court of Appeals also chose to not consider the issue of whether the statute is per se unconstitutional *(Fantis Foods v Standard Importing Co.,* 49 NY2d 317). In that case no jurisdiction was found under CPLR 302 (subd [a], par 3, cl [ii]) because there were no reasonably foreseeable New York forum consequences.

pairs of shoes, originally shipped in 40 cases to Holiday-Wise Shoe Stores, Genesco Retail Group, Nashville, Tennessee. The shoes were ultimately sold to Mrs. Darienzo in a Wise Shoe Store located in Kings County. Had the shoes been sold directly by Selbern to Holiday-Wise, for interstate resale, there would be little hesitancy in finding sufficient minimum contacts to warrant subjecting Selbern to the jurisdiction of the New York State courts. The difficulty arises because of the intervening status of Gutman.

Gutman too is a New Hampshire corporation whose business entails the manufacture and sale of shoes. Gutman actively solicits business throughout the United States, including New York. Among the shoes sold by Gutman are those which are manufactured by Selbern. However, such distribution is made solely on behalf of Gutman and is made in Gutman's name. In the instant case, Gutman solicited the sale from Wise and then contracted with Selbern for the manufacture of the shoes. This comported with the general business relationship between Gutman and Selbern.

Selbern would characterize this relationship as arm's length dealing between two independent corporations. It is Selbern's basic premise that it has no contacts with New York because its sales are entirely intrastate. The record leaves no doubt that 100% of the shoes produced by Selbern are sold to another New Hampshire corporation. That corporation is Gutman. Selbern has no sales department and manufactures only those shoes which are ordered by Gutman. Selbern relies on this relationship in its effort to insulate itself from in personam jurisdiction in New York. However, a closer examination dictates a contrary result.

Selbern and Gutman share common officers and appear to have virtual identity of shareholders. Selbern was originally organized in about 1964 by the principals of Gutman to assist the latter company in the cutting and stitching of shoes, to enable Gutman to satisfy its orders. Several years later, Selbern began manufacturing shoes in their entirety, but still limited to the essential purpose of supplementing Gutman's production facilities. Although all of Selbern's product was sold, at an operating profit, to Gutman, the officers of Selbern knew that the shoes were being manufactured for interstate commerce. Thus, Selbern packaged the shoes for interstate shipment and directly delivered the shoes to a common carrier. Because of the identity of executive management, Sel-

bern knew, upon receipt of an order for the production of shoes, that such shoes were manufactured solely for shipment to out-of-State retailers. Despite the technical intermediate sale to Gutman, it is apparent, as evidenced by Selbern's direct shipment into interstate commerce, F. O. B. Boston, that Selbern's corporate existence was entirely dependent upon interstate commerce. The actions of the corporate executives in securing orders and providing for the production of the shoes cannot be arbitrarily and artificially divided between Gutman and Selbern. In this regard, the president of both corporations, Charles Gutman, testified that he could not separate his corporate capacities.

From this perspective, it must be concluded that the statutory criteria that Selbern derived substantial revenue from interstate commerce is fully satisfied. Similarly, in view of the knowledge of Selbern's principals, albeit acting in their dual capacity as Gutman's principals, that approximately 5% of their product would be sold to consumers in New York, it must be inferred that Selbern did or should have reasonably expected forum consequences to arise in New York (see *Allen v Auto Specialties Mfg. Co.,* 45 AD2d 331). As to the particular shipment containing the allegedly defective shoe, although shipped to Tennessee, it was nevertheless known that the shoes would then be redistributed to stores in the Wise chain, including those located in New York. Thus, the stated requirements of CPLR 302 (subd [a], par 3, cl [ii]) have been met. However, implicit in the application of long-arm jurisdiction is the satisfaction of the additional due process requisites of minimum contacts.

■ ■ Due process requires that a defendant may not be subject to the in personam jurisdiction of a State court unless that defendant has certain minimal contacts, ties, or relations with the forum State *(International Shoe Co. v Washington,* 326 US 310; *Hanson v Denckla,* 357 US 235; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286).

It would appear that "if a product is purchased in the forum State by a consumer, that State may assert jurisdiction over everyone in the chain of distribution" *(World-Wide Volkswagen Corp. v Woodson, supra,* p 315, dissenting opn of MARSHALL, J.). This, of course, assumes that the sale is not an isolated event, but is rather a part of a discernible effort, by the manufacturer or distributor, to serve, directly or indirectly, a market in the forum State. If so, then due process

requirements for asserting in personam jurisdiction are satisfied when a corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" *(World-Wide Volkswagen Corp. v Woodson, supra,* p 298). In the *World-Wide Volkswagen* case, the United States Supreme Court found that there was no jurisdiction over the appellants who had absolutely no distribution or sales activities in the forum State of Oklahoma. Rather, appellant World-Wide's scope of distribution was limited to the Connecticut, New Jersey, New York, tri-State area and appellant Seaway's dealership sold cars only in New York *(id.,* p 298). The unilateral action of a consumer resulting in a claim arising in a distant forum (e.g., Oklahoma), was too attenuated a circumstance to fairly and reasonably allow that State to impose the burden of in personam jurisdiction over the appellant dealer and distributor.

Here, however, jurisdiction is being imposed upon the actual manufacturer who actively placed the allegedly defective product into interstate commerce and reasonably expected some portion of the subject lot to be sold to consumers in New York State. These factors both distinguish the *World-Wide Volkswagen* case and establish sufficient forum ties to support a finding of in personam jurisdiction. When the relevant circumstances are realistically appraised, it is evident that Selbern has ties to interstate commerce with the reasonable expectation of forum consequences in New York resulting from the anticipated and intended sale of its product to New York consumers. This is sufficient to satisfy the due process requirements of minimum contacts and substantial fairness (see *Gillmore v J. S. Inskip, Inc.,* 54 Misc 2d 218; *Gray v American Radiator & Std. Sanitary Corp.,* 22 Ill 2d 432). Consequently, the denial of Selbern's motions to dismiss the third-party complaints for lack of in personam jurisdiction was proper.

HOPKINS, J. P., O'CONNOR and WEINSTEIN, JJ., concur.

Appeal from an order of the Supreme Court, Kings County, dated October 23, 1978, dismissed as academic. That order was superseded by the order of resettlement dated February 15, 1979.

Order of the same court, dated February 15, 1979 affirmed.

Respondents are awarded one bill of costs payable by appellant.