Joseph MONTALBANO, Plaintiff,

v.

EASCO HAND TOOLS, INC.,
Defendant-Appellant.

The Moore Company, Defendant,

The Stanley Works, Nannen American
Corporation and OH Industries,
Defendants-Appellees,

Rickles Home Centers, Defendant.

No. 1071, Docket 85–7038.

United States Court of Appeals,
Second Circuit.

Argued April 17, 1985.

Decided July 9, 1985.

David S. Heller, New York City (Raymond G. Lawlor, New York City, of counsel), for appellant.

C. Raymond Nelson, New York City (Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, Avrom E. Greenberg, of counsel), for appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

This is a products liability case on appeal taken under Fed.R.Civ.P. 54(b) from an interlocutory order of the United States District Court for the Eastern District of New York, I. Leo Glasser, Judge, dismissing defendants OH Industries ("OH"), a Japanese manufacturer of forgings for striking tool (sledge hammers, mauls) heads, and Nannen American Manufacturing Corporation (Nannen), a Pennsylvania distributor of such forgings. OH was dismissed because it had never been properly served with process, and Nannen was dismissed because it lacked the minimum forum-state contacts necessary to sustain in personam jurisdiction under New York law or federal constitutional law. We affirm the dismissal of OH; we reverse and remand for further findings in respect to the dismissal of Nannen.

The action was brought by plaintiff Joseph Montalbano to recover damages for personal injuries allegedly sustained on or about November 3, 1981, while using a sledge hammer in combination with a wood-splitting maul. The suit alleges negligence, breach of warranty and strict liability on the part of the original defendants Easco Tool, Inc. ("Easco"), and The Moore Company ("Moore"), an affiliate of Easco, which were alleged to be the manufacturers of the sledge hammer. Easco and Moore filed third-party complaints to implead OH Industries ("OH"), the alleged manufacturer of the sledge head; Nannen, the alleged distributor of the sledge head; The Stanley Works ("Stanley"), also a distributor of striking tools and the alleged manufacturer of the wood-splitting maul; and Rickles Home Centers ("Rickles"), the alleged New York vendor of the sledge hammer. Eventually, the plaintiff amended his complaint to assert direct claims against the four third-party defendants, and all of the defendants have asserted cross-claims against each other.

Pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) and (d)(3) [1], Easco attempted to serve process upon OH by mailing a copy of the summons and complaint to Nannen, which was assumed by Easco to be OH's agent. Responding to Easco's third-party complaint, as well as to Montalbano's amended direct complaint and the cross-claims of the other defendants, OH and Nannen pleaded as affirmative defenses a lack of personal jurisdiction, with OH also pleading improper service.[2]

After reviewing the procedural background of the case and the respective activities of OH and Nannen, the district court concluded that the service on OH by mail in

---

**1.** Rule 4(d)(3) provides that service shall be made:

Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a. common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Rule 4(c)(2)(C)(ii) states that:

(C) A summons and complaint may be served upon a defendant of any class referred to in paragraph ... (3) of subdivision (d) of this rule—

....

(ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

**2.** Montalbano did not attempt any additional service of process in amending his complaint to include OH, Nannen, Rickles, and Stanley as defendants.

care of Nannen was not sufficient to subject OH to the jurisdiction of the court and therefore found it unnecessary to decide whether OH's contacts with the forum state rendered it amenable to the in personam jurisdiction of the District Court for the Eastern District of New York. The court dismissed the claims against OH conditionally, "until such time as Easco or another party has perfected service upon it of a summons and complaint."

With respect to Nannen, the district court reviewed each provision of N.Y.Civ. Prac.Law § 302 (McKinney 1972 & Supp. 1984),[3] the New York long-arm statute, that was alleged as a basis for jurisdiction. It summarily rejected claims for jurisdiction based upon transaction of business within the state, and upon ownership, use, or possession of real property within the state. It also rejected Easco's claim for jurisdiction based upon the commission outside the state of a tort that causes injury within the state, where the tortfeasor regularly does or solicits business in New York or derives substantial revenue from goods used or consumed within the state; the court found no basis for jurisdiction on this ground even though Nannen's principal, Jack Nannen, had been affiliated with other corporations that solicited business in New York, because none of those corporations had marketed tools while in New York and none were currently transacting business of any kind in New York. Finally, the court refused to grant jurisdiction based upon the commission of a tort outside the state which causes injury within the state, where the tortfeasor expects or should reasonably expect such act to have consequences in New York and derived substantial revenue from interstate or international commerce. Although finding that Nannen did derive substantial revenue from interstate commerce, the court concluded that Easco had "failed to allege facts to suggest that Nannen could reasonably anticipate being haled into a New York court as a consequence of the sale of its product to Easco's plant in Pennsylvania."

## DISCUSSION

### Jurisdiction Over OH

OH, a corporation organized under the laws of Japan, maintains its offices and manufacturing plant at Higaski-Osaka, Japan. It makes forged steel products, including sledge heads, for sale in Japan and in the international market. It has no office, manufacturing plant, manufacturer's representatives or other facilities in the United States, no bank accounts or other assets in New York or any other state, and does not advertise in any United States publication or maintain a telephone listing in the United States; furthermore, OH has no corporate subsidiaries in the United States, nor is it affiliated with other corporate organizations doing business in the United States. It sells exclusively through Japanese trading companies located in Japan and ships by water to various ports other than the port of New York.

Easco's principal argument as to OH is that, where there are other means to effect

---

**3.** Section 302, as amended in 1979, provides in part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

proper service pursuant to Fed.R.Civ.P. 4(i),[4] an action should not be dismissed for failure to serve. *See Alexander v. Unification Church of America*, 634 F.2d 673, 675 (2d Cir.1980); *Hill v. W. Bruns & Co.*, 498 F.2d 565, 568 (2d Cir.1974); *Grammenos v. Lemos*, 457 F.2d 1067, 1071 (2d Cir.1972). Easco also points out that the recently adopted Fed.R.Civ.P. 4(j),[5] which requires dismissal without prejudice if service is not made within 120 days after the filing of the complaint, expressly states that it "shall not apply to service in a foreign country pursuant to subdivision (i)" of the same rule. It argues that, given Rules 4(i) and 4(j), dismissal was inappropriate since it reasonably believed that it had served OH's American agent.

We cannot agree with either of Easco's arguments. Where service of process is insufficient, "[t]he courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant," 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1354, at 585 (1969) (footnote omitted), even though service will ordinarily be quashed and the action preserved where "there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly," *id.* at 586 (footnote omitted). *Accord Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C.Cir.1983); *Alexander*, 634 F.2d at 675. Here, the district court did not contravene subdivision 4(j) even though it did not preserve the action. Subdivision 4(j), with its foreign country exception to the 120-day period for service, is simply inapplicable here, because Easco never attempted to serve process in a foreign country under subdivision (i); the 120-day time limit imposed by Rule 4(j) seems therefore perfectly proper,[6] especially since Easco has not exactly bent over backward to effect service. So saying, we hold the dismissal of OH for failure to make service is proper, noting that such dismissal is, in any event, conditional. We need not reach the question whether OH was amenable to personal jurisdiction in New York State.

## Jurisdiction Over Nannen

Nannen is a Pennsylvania corporation importing, inter alia, sledge heads from Japan

---

**4.** Rule 4(i) provides in part:

(i) Alternative Provisions for Service in a Foreign Country.

(1) Manner. When ... state law ... authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or (C) upon an individual, by delivery to him personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (E) as directed by order of the court. Service under (C) or (E) above may be made by any person who is not a party and is not less than 18 years of age or who is designated by order of the district court or by the foreign court. On request, the clerk shall deliver the summons to the plaintiff for transmission to the person or the foreign court or officer who will make the service.

**5.** Rule 4(j) reads as follows:

(j) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

**6.** A commentator points out that before 1983 there was no set time limit for summons service after the filing of the complaint; instead, a kind of due diligence standard was flexibly applied. Siegel, Practice Commentaries U.S.C.A. Rule 4, at 54 (West Supp.1985) (citing *Grammenos v. Lemos, supra*, with approval). According to Siegel, because the 1983 amendment to Rule 4 removed the marshal as the exclusively authorized process server, it was thought advisable to put some stated cap on the time for serving the summons, hence the 120 day limit, which, Siegel states, seems more than enough time. *Id.*

and other Far East countries. On behalf of Easco, Nannen located and placed orders with OH for sledge-head forgings made pursuant to Easco's specifications. Nannen's customers include Easco, which has its headquarters in Baltimore, Maryland, and three other companies located in Pennsylvania, Georgia, and Florida, respectively. Nannen is not an exclusive sales representative of OH, and OH does not assert any authority over the conduct of Nannen's business, both companies being entirely independent of each other. Nannen does not sell OH products directly in New York and asserts that it does not know what disposition is made of the OH forgings after they are imported from OH and sold to its customers. Easco's purchase orders for OH sledge-head forgings originated at Easco's Reading, Pennsylvania, facility and were issued to Nannen at its office in the same city.

In connection with the issue of in personam jurisdiction over Nannen, Easco's claim on appeal rests on its allegation that Nannen committed "a tortious act without the state causing injury to person or property within the state ... [and] ... expect[ed] or should reasonably [have] expect[ed] the act to have consequences in the state [while] deriv[ing] substantial revenue from interstate or international commerce," N.Y.Civ. Prac.Law § 302(a)(3)(ii). As former Dean, now Judge, Joseph M. McLaughlin's Supplementary Practice Commentaries indicate, N.Y.Civ.Prac.Law § 302, at 37 (McKinney Supp.1984), "it is apparent that the New York courts are construing the foreseeability requirement of subparagraph 3(ii) with an eye on the Supreme Court decision in *World-Wide Volkswagen Corp. v. Woodson*," 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This being true, it is perhaps best to examine *World-*

*Wide Volkswagen* before we consider cases construing the New York statute.

*World-Wide Volkswagen*, it will be recalled, was a products liability action instituted in an Oklahoma state court to recover for personal injuries sustained in an accident involving an automobile, purchased by New York residents in New York, that was being driven through Oklahoma at the time of the accident. Among the defendants were the retailer, from whom plaintiffs purchased the automobile, and its wholesaler—both of which were New York corporations that did not conduct business in Oklahoma. In finding that the Oklahoma court lacked in personam jurisdiction over the New York defendants, the Supreme Court held that, as a constitutional prerequisite to the exercise of in personam jurisdiction, a defendant's contacts with the forum state must be such that maintaining the lawsuit does not offend traditional notions of fair play and substantial justice, with the relationship between the defendant and the forum making it "'reasonable ... to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).[7] The Court stated that "foreseeability" alone had never been a sufficient benchmark under the due process clause, *id.* 444 U.S. at 295, 100 S.Ct. at 566, even though that "is not to say ... that foreseeability is wholly irrelevant," *id.* at 297, 100 S.Ct. at 567. The relevant notion of foreseeability is not the mere likelihood that the product will find its way into the forum state but rather "the defendant's conduct and connection with the forum State ... such that he should reasonably anticipate being haled

---

**7.** The Court, identifying some of the affiliating circumstances whose existence might have supported the Oklahoma exercise of jurisdiction, noted that the defendants had not conducted sales or service operations in Oklahoma, did not obtain the benefits of Oklahoma law, had not solicited Oklahoma business either through a sales force or advertising directed to reach Oklahoma, and did not regularly sell cars either at

wholesale or retail to Oklahoma customers or residents. *World-Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566. Furthermore, and of particular importance to the present case, the Court found that there had been no showing that the defendants "indirectly, through others, serve or seek to serve the Oklahoma market." *Id.*

into court there," *id.,* for example, by " 'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,' " *id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

The crucial aspect of *World-Wide Volkswagen* for this case is the Court's statement that

if the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly *or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.

*Id.* (emphasis added). Thus, under the due process clause, the question presented by the district court's dismissal of Nannen is whether Nannen sought to serve "directly or indirectly, the market for its product" in New York, a state adjoining Pennsylvania. This is a question the district court simply did not answer to our satisfaction, in saying only that because Nannen sold OH products to just four areas—Pennsylvania, Georgia, Maryland and Florida—it "could hardly have foreseen that these items would have come to rest in New York," especially in light of Nannen's knowledge that the sledge heads it sold to Easco would be assembled into tools that Easco would distribute at retail.

Examination of the New York cases is instructive. In *Martinez v. American Standard,* 91 A.D.2d 652, 457 N.Y.S.2d 97, 98 (1982), *aff'd mem.,* 60 N.Y.2d 873, 470 N.Y.S.2d 367, 458 N.E.2d 826 (1983), Martinez sustained personal injuries as a consequence of the alleged malfunctioning of an American Standard air-conditioning unit in which a compressor manufactured by Tecumseh Products Co had been installed. Tecumseh in turn sought indemnification or contribution from Vitreous State Products, which had manufactured and sold terminal pins used in Tecumseh's compressors. The

court reversed a finding of jurisdiction that had been based on a "stream of commerce" analysis whereby a manufacturer would be deemed to have foreseen the consequences of an allegedly defective product by having placed that product on the market for general distribution. *Id.,* 91 A.D.2d at 654, 457 N.Y.S.2d at 99. Following *World-Wide Volkswagen,* it found the mere likelihood that a product will find its way into the forum state to be an insufficient basis for jurisdiction, the foreseeability requirement itself being restricted by a "purposeful affiliation requirement." *Id.* Turning to the facts of the case before it, the court held that jurisdiction could not be exercised over Vitreous because the record revealed "no tangible manifestation" indicating that Vitreous knew or should have known where Tecumseh's compressors were destined or that Vitreous was attempting to reach a New York market through Tecumseh. *Id.,* 91 A.D.2d at 654, 457 N.Y.S.2d at 99.

*Martinez* is worth comparing with *Darienzo v. Wise Shoe Stores, Inc.,* 74 A.D.2d 342, 427 N.Y.S.2d 831 (1980). There, personal injuries were allegedly sustained when a high heel separated from the shank of a shoe, causing the plaintiff to fall from the platform of an elevated train station to the tracks below; plaintiff brought suit against Wise Shoe Stores, Inc., a shoe retailer, and Gutman-Kesslyn Shoes, Inc., a shoe manufacturer and distributor. *Id.* at 343–44, 427 N.Y.S.2d at 832. Wise and Gutman-Kesslyn then filed a third-party complaint against Selbern Shoe Co., Inc., a New Hampshire shoe manufacturer. Selbern, 5% of whose annual sales of approximately 500,000 pairs of shoes reached New York retailers, had originally manufactured the shoes in question on an order placed with it by Gutman-Kesslyn, also a New Hampshire company, which in turn had solicited the order from Wise. The shoes were shipped by Selbern directly to Wise's Nashville, Tennessee, location, and then reshipped by Wise to its retail store in Kings County, New York. *Id.* at ·344–45, 427 N.Y.S.2d at 832–33. Selbern moved to dismiss the third-party complaint against it for lack of personal jurisdiction, claiming

that it had no contacts with New York since its sales were based exclusively on orders from Gutman-Kesslyn and were therefore intrastate. The court rejected Selbern's claim, holding that, because Gutman-Kesslyn and Selbern shared officers and had virtually identical shareholders, Selbern's expectation of forum consequences in New York could be inferred from the fact that Selbern's principals, serving also as Gutman-Kesslyn's principals, had knowledge of Gutman-Kesslyn's New York market. *Id.* at 345–47, 427 N.Y. S.2d at 833–34.

Although in personam jurisdiction was found lacking in *Martinez* but present in *Darienzo*, both cases are consistent with the principal, articulated in *World-Wide Volkswagen*, that there is more to "minimum contacts" than mere foreseeability. The defendant was dismissed in *Martinez* after the record had been unsuccessfully searched for evidence of "tangible manifestations" of even indirect efforts to reach a New York market. The defendant remained a party to the action in *Darienzo*, despite the absence of direct sales by defendant to New York customers, because the record revealed, to use the language of *Martinez*, defendant's "purposeful affiliation" with a distributor that served an interstate market that included New York. Both *Martinez* and *Darienzo*, therefore, suggest that in the case before us, something more than evidence that Nannen directly serviced only a four-state non-New York market is necessary to support Nannen's claim that it is not amenable to the jurisdiction of the district court. Easco and Nannen do not, of course, have common shareholders and officers; nevertheless, Nannen may well have known about the range of Easco's business.[8] The record is simply insufficiently developed to permit

a finding that Easco failed to establish the court's jurisdiction over Nannen.

We note that in *World-Wide Volkswagen* the Court cites with apparent approval *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), where an Illinois court was found to have jurisdiction over an Ohio safety valve manufacturer, one of whose safety valves was installed in Pennsylvania into a hot water heater that eventually caused injury in Illinois to an Illinois consumer. We also note *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1124–26 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984). *Nelson by Carson* holds that the relevant scope of the foreseeable market is "generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market." *Id.* at 1125; *see also id.* at 1126 (citing other cases). So, too, was Nannen an "early actor[ ] in a distribution system which places and moves the product in the stream of commerce." *Id.* at 1126. And just as the critical factor for the Seventh Circuit was "whether [the distributor and manufacturer] were aware of [the retailer's] distribution system," *id.,* so, too, the question here is whether Nannen was aware of the nature and extent of Easco's distribution system. That question remains unanswered.

Affirmed as to OH, and reversed and remanded as to Nannen. No costs to either party.

---

**8.** Although Easco's orders to Nannen for sledge heads emanated from and were shipped to Pennsylvania, the record suggests that Nannen was aware that the sledge heads would be shipped to Easco's warehouse in Maryland. Furthermore, Mr. Nannen, the sole owner and officer of Nannen, presumably had at least some familiarity with the way striking tools are

marketed, since he apparently was or is now involved with various enterprises that sold or sell striking tools, and since there is evidence that some 527,756 sledge heads were shipped in the last five years from OH to Nannen for redistribution to Easco and the other sledge makers.