Paul J. HEIN, Plaintiff,

v.

CUPRUM, S.A. DE CV., and Hechinger Company, Defendants.

No. 99–CV–1360(LEK) (RWS).

United States District Court, N.D. New York.

March 30, 2001.

Kenneth G. Varley, Donohue, Sabo Law Firm, Albany, NY, Joseph Hein, Office of Joseph Hein, Altamont, NY, for Plaintiff.

Richard M. Gershon, Kristen H. Martin, Thorn, Gershon Law Firm, Albany, NY, for Defendant.

## DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is defendant Cuprum's· motion to amend and, in the alternative, to dismiss. For the following reasons, defendant Cuprum's motion is DENIED.

## I. BACKGROUND

Plaintiff received a six-foot aluminum ladder as a gift in the spring of 1997. That ladder was purchased at an outlet store of defendant Hechinger's successor corporation, Builder's Square, located in Colonie, New York. Defendant Cuprum manufactured the ladder in Mexico.

Two years after receiving the ladder, Plaintiff alleges that it unexpectedly collapsed beneath him, causing serious head injuries. He filed suit on August 27, 1999 against both defendants claiming they violated New York's product liability law and breached the ladder's warranty. On February 7, 2000, defendant Cuprum filed a letter brief seeking leave of the Court to amend its answer and raise certain affirmative defenses that its former counsel failed to raise. In that letter, defendant Cuprum also argued on the basis of these new defenses that dismissal of· all claims against it was proper. The Court will address these matters in turn.

## II. ANALYSIS

### A. *Motion to Amend*

Defendant Cuprum seek leave of this Court to amend its answer. After the filing of a responsive pleading, a party may amend a pleading only by leave of the court, which leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This Court has held that leave to amend shall be freely given absent any reason to the contrary, such as bad faith,

undue delay, or futility of amendment. *See Stetz v. Reeher Enters., Inc.,* 70 F.Supp.2d 119, 121 (N.D.N.Y.1999).

There is no evidence of bad faith or undue delay on the part of defendant Cuprum. Rather, it appears on the basis of the papers submitted that defendant Cuprum changed law firms in late 1999 and its new law firm did not receive this case file from defendant Cuprum's old law firm until December 16, 1999. On that date, defendant Cuprum's new law firm reviewed the file and immediately contacted Magistrate Judge Ralph W. Smith to request an extension of time to amend its answer in order to assert various affirmative defenses that the prior law firm failed to raise. Magistrate Judge Smith directed the parties to file the letter briefs presently before the Court and then, because the briefs raised dispositive issues, directed this Court to decide them on the merits.

■ Plaintiff asserts that defendant Cuprum waived its right to assert these defenses because it failed to raise them in its initial answer. The Court rejects this assertion. Under Federal Rule of Civil Procedure 12(h)(1), a defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process is waived if, in part, the party seeking to assert the defense does not include it in a responsive pleading or move to amend its pleading under Rule 15(a). *See* Fed.R.Civ.P. 12(h)(1).

Here defendant Cuprum moved to amend its pleading under Federal Rule of Civil Procedure 15(a)(1), bringing it within the waiver exception to Federal ·Rule 12(h)(1). Significantly, this motion was made less than three months after defendant Cuprum's original counsel filed its initial answer and before either defendant Cuprum's original counsel or new counsel filed any other motions with this Court. Given the confusion surrounding defendant

Cuprum's change in counsel and the speediness in which defendant Cuprum's new counsel made its request to amend the original answer, the Court holds that defendant Cuprum did not waive its ability to assert the affirmative defenses of insufficient service of process and lack of personal jurisdiction. Thus, unless defendant Cuprum's motion to amend is not futile, a matter which the Court will now address, it should be granted.

### B.  *Lack of Personal Jurisdiction*

■  Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum state. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). Plaintiff maintains, and defendant Cuprum disputes, that § 302(a)(3) of New York's long arm statute provides the Court with personal jurisdiction over defendant Cuprum. Defendant Cuprum also argues that Plaintiff's attempt to "hale" it into court in this country, pursuant to that statute, runs afoul of its constitutional right to due process.

### 1.  New York's Long Arm Statute

Under § 302(a)(3) of New York's long arm statute,

(a) a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

    3.  commits a tortious act without the state causing injury to person or property within the state, ... if he

    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue for goods used

or consumed or services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate 'or international commerce.

N.Y.C.P.L.R. § 302(a)(3) (McKinney 1997). Although, it is unclear to the Court, given the brevity of Plaintiff's letter brief, which prong of § 302(a)(3) he believes applies to the instant matter, because the Court believes that exercising personal jurisdiction over defendant Cuprum is appropriate under the second prong of § 302(a)(3), it does not address whether the first prong also provides a basis upon which to assert jurisdiction.

■  In order for the Court to assert jurisdiction over defendant Cuprum pursuant to § 302(a)(3)(ii), five elements must be met. *See LaMarca v. Pak–Mor Mfg. Co.,* 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000). First, the defendant must commit a tortious act outside New York. *See id.* Second, Plaintiff's cause of action must arise from that act. *See id.* Third, the act must cause injury to a person or property within New York. *See id.* Fourth, the defendant must expect or reasonably expect that the act will have consequences in New York and fifth, the defendant must derive substantial revenue from interstate or international commerce. *See id.*

Neither party disputes that the first three elements are met here. Plaintiff has alleged that his cause of action arises from defendant Cuprum's tortious act occurring outside New York.[1] Moreover that tortious act allegedly injured Plaintiff at his residence located in New York.[2] Rather, both

---

1.  Defendant Cuprum's alleged tortious act was the manufacture of Plaintiff's defective ladders at its Mexico plant.

2.  The ladder collapsed at Plaintiff's residence in New York.

parties dispute whether the fourth and fifth element support personal jurisdiction in this case.

■ The fourth element is met when a "nonresident tortfeasor ... expect[s], or ha[s] reason to expect, that his or her tortious activity in another State will have direct consequences in New York." *Ingraham v. Carroll*, 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997). This element is "intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." *Id.* Thus, a Court may not assert personal jurisdiction over a nonresident defendant simply because it "foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example a discernible effort to directly or indirectly serve the New York market." *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 970, 564 N.Y.S.2d 865 (3d Dep't 1991); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988).

■ In the instant case, Plaintiff provided the Court with a "Purchase Agreement" indicating that defendant Cuprum and Builder's Square had a marketing support fund whereby both parties contributed money to an account used exclusively to increase consumer awareness of defendant Cuprum's ladders in Builder's Square stores. By implication, Plaintiff wishes the Court to find that, because Builder's Square had outlets in New York at time this fund was established, it indirectly attempted to serve the New York market. Although, this is admittedly a close question, the Court agrees with Plaintiff.

The Second Circuit, in *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999), addressed a similar situation to that here and found that jurisdiction under § 302(a)(3)(ii) was appropriate. In *Kernan*, the third party defendant corporation was a Japanese manufacturer of hot stamping presses that sold and shipped its presses to this country. *See id.* at 239, 175 F.3d 236. The Japanese manufacturer delivered its presses to an exclusive distributor in this country pursuant to a contract containing a clause whereby the distributor and manufacturer agreed to exchange information for the purpose of developing and producing new machines. *See id.*

After surveying New York law regarding § 302(a)(3)(ii), the Court concluded that the this exchange of product and market information rendered the case distinguishable from a situation where a foreign corporation simply sells an item to a distributor with the knowledge that the distributor will market the product throughout the United States. *See id.* at 241–42. Under the latter situation personal jurisdiction would not lie under § 302(a)(3)(ii). *See id.* at 242. In contrast, the Court concluded that personal jurisdiction over a foreign corporation pursuant to § 302(a)(3)(ii) would lie when the corporation exchanged marketing information with its distributor and had "general knowledge" that its produce would be sold throughout the United States and ultimately wound up sold in New York. *Id.* The Circuit Court found that § 302(a)(3)(ii) was satisfied in this situation even though the distribution agreement at issue did not specify delivery of goods to New York. *See id.*

This Court concludes that the Purchase Agreement here is similar to the one analyzed in *Kernan*. Specifically, the Court notes that the Agreement's creation of the market support fund to bolster defendant Cuprum's sales of its ladders in Builder's Square stores, at a time when Builder's Square had outlets in New York, supports

the inference that defendant Cuprum attempted to indirectly serve the New York market. Moreover, given that defendant Cuprum entered into the Purchase Agreement with a distributor that had outlets in this State and that it deliberately intended to mass market its ladders in the United States, it is not possible to conclude that it did not, at a minimum, have "generalized knowledge" that its machines would be sold here. In short, Plaintiff has presented enough evidence to satisfy the reasonable expectation requirement of § 302(a)(3)(ii).

As to the Fifth element, Plaintiff's tender of the Purchase Agreement as well as pages from defendant Cuprum's web site indicates that it derives significant revenue from international commerce. According to this information, defendant Cuprum exports its ladders to twenty nations worldwide and derived fourteen percent of its 1998 income from these exports. As such, the Court has no trouble holding that Plaintiff has also presented enough evidence to satisfy the international commerce requirement of § 302(a)(3)(ii).

### 2. Due Process

The due process clause permits a forum to exercise personal jurisdiction over a non-resident defendant when the defendant has "certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see Burger King Corp. v. Rudzew-*

*icz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). When, as here, the action arises from the defendant's contacts with the forum state,[3] a court need only conclude that "limited" or "specific jurisdiction exists" in order for the suit to proceed. *Chaiken v. VV Publ'g Corp.,* 119 F.3d 1018, 1027–28 (2d Cir.1997). In such a case, the "required minimum contacts exist where the 'defendant purposefully availed,' itself of the privilege of doing business in the forum and could foresee being 'haled into court,' there." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 151 (2d Cir. 2001).

In addition to the above requirements, the assertion of personal jurisdiction must be reasonable under the circumstances of the case. *See id.* Whether it is reasonable for the Court to exert personal jurisdiction depends on

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chaiken,* 119 F.3d at 1028 (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996)).

Here, the record establishes that defendant Cuprum "purposefully availed" itself of the New York forum by negotiating and forming a contract with a United States distribution corporation that distributed its goods here. Additionally, incorporated into the contract was a provi-

---

**3.** Defendant Cuprum's action underpinning this conclusion was its sale of the allegedly defective ladder to Builder's Square, which then sold the machine in New York. *Kernan,* 175 F.3d at 243.

sion mandating that defendant Cuprum contribute money to an account that was utilized, in part, to market its products here. Given these actions, defendant Cuprum should have foreseen the possibility of being haled into a New York court if one of its products injured an individual here.

Moreover, the exercise of jurisdiction in this case is reasonable. New York has a distinctly palpable interest in providing a forum where its residents may obtain relief when they are injured by allegedly faulty goods sold here. Moreover, because the Plaintiff resides here, resolution of the current dispute in New York is convenient and effective for him. Resolving the current dispute here is also more efficient than doing so elsewhere, as New York is the site of the alleged accident and good portions of the evidence and witnesses reside here. Finally, providing a forum to adjudicate tort actions that occur here furthers the substantive social policy of providing accountability against those that engage in commerce in this country and injure those that they deal with here.

The only factor weighing against the reasonableness of exercising personal jurisdiction over defendant Cuprum in this case is the burden that the exercise of jurisdiction imposes on it. The Court finds, however, that on balance this factor does not outweigh the other factors pertinent to this Court's reasonableness analysis. As such, the Court concludes that exercising personal jurisdiction over defendant Cuprum in this case does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Accordingly, any proposed amendment to defendant Cuprum's answer on this basis would be futile. As such, its motion to amend, or in the alternative, to dismiss on the basis of lack of personal jurisdiction is denied.

**B.** *Insufficiency of Service of Process*

■ Defendant Cuprum also moves to dismiss based upon Plaintiff's failure to serve process upon it in accordance with the Inter–American Convention on Letters Rogatory. Plaintiff does not rebut the fact that its attempt to serve defendant Cuprum by mailing a copy of the complaint to defendant Cuprum's post office box in Mexico was not in compliance with this Convention. Nevertheless, the Court disagrees with defendant Cuprum's assertion that Plaintiff's non-compliance with the service of process requirements contained in the Inter–American Convention on Letters Rogatory warrants dismissal of its claims.

The Inter–American Convention on Letters Rogatory is not the exclusive means to serve process on defendant Cuprum. *See Laino v. Cuprum, S.A. de C.V.*, 235 A.D.2d 25, 30, 663 N.Y.S.2d 275 (2d Dep't 1997); *Mayatextil, S.A. v. Liztex, U.S.A.*, No. 92 CIV 4528, 1994 WL 198696, at \*5 (S.D.N.Y. May 19, 1994); *Pizzabiocche v. Vinelli*, 772 F.Supp. 1245, 1249 (M.D.Fla. 1991). Pursuant to Fed.R.Civ.P. 4(f), Plaintiff could also have served process on defendant Cuprum under the terms of the Hague Convention on the Service of Judicial and Extra-judicial Documents in Civil Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention"). *See* Fed.R.Civ.P. 4(f). Under Article 10 of the Hague Convention, as interpreted in this Circuit, service of process by registered mail on a foreign defendant located in a signatory country is permissible.[4] *See Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir.1986); *Heredia v. Transport S.A.S., Inc.*, 101 F.Supp.2d 158, 161 (S.D.N.Y.2000).

On the sparse record before the Court, it is not clear whether Plaintiff served

---

4. Mexico is a signatory to the Hague Convention.

defendant Cuprum via registered mail or ordinary mail. To the extent that Plaintiff did serve defendant Cuprum in Mexico by registered mail, the Court holds that service of process was perfected and defendant Cuprum's motion to amend and, in the alternative, to dismiss on the basis of insufficient service of process is denied as futile. Alternatively, if Plaintiff served defendant Cuprum in Mexico by ordinary mail, service of process was not perfected.

Nevertheless, in the circumstances of this case, defendant Cuprum received actual notice of the current action by that imperfect attempt at service of process. Moreover, has actively litigated and defended this matter over the course of the past two years, filing not only a pending motion for summary judgment but also an entire banker's box full of pre-trial submissions. Thus, defendant Cuprum suffered no prejudice as a result of this imperfection and it cannot claim that it failed to receive notice apprizing it of the pendency of the current action. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Furthermore, there is a strong possibility that Plaintiff will ultimately be able to serve defendant Cuprum properly. *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir.1985).

As a result, if Plaintiff has not already served defendant Cuprum via registered mail or another manner allowed under either the Hague Convention or the Inter–American Convention on Letters Rogatory, it must do so within sixty days of the issuance of this Order. During this sixty period, the Court will retain jurisdiction over the matter but quash Plaintiff's prior attempt to serve process on defendant Cuprum. *See id.* If Plaintiff fails to properly serve process on defendant Cuprum at the expiration of this sixty period, his claims against defendant Cuprum will once again be subject to dismissal by the Court.

### III. CONCLUSION

Accordingly it is hereby

ORDERED that defendant Cuprum's motion to amend, and in the alternative, to dismiss is DENIED; and it is further

ORDERED that if Plaintiff effected service of process on defendant Cuprum in Mexico via ordinary mail he must correct this defect within sixty days of the issuance of this opinion or all claims against defendant Cuprum will be subject to dismissal; and it is further

ORDERED that the Clerk of the Court serve a copy of this Order on all parties by mail.

IT IS SO ORDERED.