Leslie SHAW, Plaintiff,

v.

ROLEX WATCH U.S.A., INC., et al., Defendants.

No. 86 Civ. 5244 (WCC).

United States District Court, S.D. New York.

Sept. 24, 1990.

As Amended Nunc Pro Tunc Dec. 17, 1990.

Soller, Singer & Horn, Carl R. Soller, Ellen L. Federman, of counsel, New York City, for plaintiff.

Gibney, Anthony & Flaherty, Stephen F. Ruffino, of counsel, New York City, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Defendants Rolex Watch U.S.A., Inc. and Rolex Industries, Inc. ("Rolex") seek judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., dismissing the action for failure to state a claim. Defendant Montres Rolex, S.A. ("Montres") seeks an order dismissing the complaint under Rule 4(j) or 41(b), Fed.R.Civ.P. for failure to serve process upon Montres within 120 days after filing the complaint. For the following reasons, Rolex's motion for judgment of dismissal under Rule 12(c) is denied and Montres' Rule 4(j) motion is granted.

## BACKGROUND

In this action, plaintiff Leslie Shaw alleges that the defendants unlawfully engaged in a conspiracy to prevent the unauthorized importation of Rolex watches. 19 U.S.C. § 1526(a) allows the owner of a registered trademark to prevent the unauthorized importation of products bearing that trademark. When a copy of the trademark registration is lodged with the United States Customs Service ("Customs"), Customs will seize trademarked goods imported by someone other than the trademark owner. When the goods are made by a foreign trademark owner which is under common ownership and control with the United States trademark holder, the protections of this section are unavailable. *See* 19 C.F.R. § 133.21(c)(2). Shaw asserts that defendants falsely claimed in statements submitted to United States Custom officials that they were not under common ownership or control with the owner of the Swiss registration.

In an Opinion and Order dated December 21, 1989, familiarity with which is presumed, this Court denied defendant's motion for judgment on the pleadings and ruled that the reliance requirement for standing under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) *et seq.* may be satisfied through allegations that third-party reliance has caused harm to the plaintiff. 726 F.Supp. 969. The Court determined that Custom's reliance on the alleged fraud was sufficient for plaintiff to state a claim under RICO based on the predicate acts of mail and wire fraud. Rolex now claims that even if third-party reliance sufficiently meets RICO's reliance requirement, the complaint must be dismissed because Shaw cannot prove that any damages suffered were proximately caused by defendants' alleged RICO violations.[1]

## DISCUSSION

### I. Standard of Review

■ The analysis under Rule 12(c) is identical to that under Rule 12(b)(6). *See* Wright & Miller, *Federal Practice and Procedure* § 1367 at 518–519 (5th ed. 1990). A motion to dismiss should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 40 (2d Cir.1983). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Katz v. Klehammer,* 902 F.2d 204 (2d Cir.1990).

### II. Proximate Cause

■ There is no doubt that Rolex's allegedly fraudulent submissions to Customs was a "but for" cause of the seizure of Shaw's watches. However, in order to make out a RICO claim, the RICO predi-

---

1. This Court rejects Shaw's claim that defendants are improperly asking this Court to reconsider its Order and Opinion dated December 21, 1989. In that Opinion, the Court did not discuss whether Shaw's injury was proximately caused by defendants' alleged RICO violations, but focused on whether third-party reliance which injured Shaw provided standing under RICO.

cate acts or pattern of racketeering activity must be a proximate cause of plaintiff's injury. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–4 (2d Cir.1990); *Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988); *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984). In a recent opinion, the Second Circuit Court defined proximate cause in a RICO case, stating "the RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht*, 897 F.2d at 23–4.

■ Contrary to Rolex's assertion, the facts in *Hecht* shed little light on whether the harm alleged in this case was proximately caused by defendant's recordation. In *Hecht*, the plaintiff alleged that he was terminated from his position after refusing to cooperate in the concealment of various frauds engaged in by the defendant employer and co-employees. The Second Circuit Court held that the plaintiff's injury in the form of the loss of employment and business commissions was not proximately caused by the fraud alleged to violate RICO. In so holding, the Second Circuit Court found it relevant that Hecht was not the target, customer or competitor of the enterprise. *Id.* at 24. In this case, unlike *Hecht*, Shaw was at least a potential competitor of Rolex.[2] The issue in this case is thus whether, despite Shaw's status as a potential competitor of defendants, his injuries were proximately caused by defendants' alleged predicate acts.

In deciding this issue, we first turn to Shaw's complaint. In paragraph 64 of his complaint, Shaw alleges that he was aware that Rolex had recorded its trademark registrations with Customs. In paragraph 44, Shaw alleges that he attempted to import eight Rolex watches which were seized by Customs officials. Thus, Rolex argues that defendants were not the proximate cause of Shaw's injury because Shaw deliberately proceeded with the attempted importation, despite knowing of the recordation. In his memorandum in opposition to Rolex's motion, Shaw does not deny that he proceeded with the importation despite prior knowledge of the recordation.

Rolex cites several cases to support its position that Shaw's awareness of the recordation acts as an intervening cause relieving defendants of liability. *See Caraballo v. United States*, 830 F.2d 19 (2d Cir.1987) (plaintiff swimmer's diving head-first into obviously shallow water was the unforeseeable superceding cause of plaintiff's injury); *Raimon v. Ithaca*, 157 A.D.2d 999, 550 N.Y.S.2d 479 (3d Dep't 1990) (plaintiff paraplegic's injury resulting from driving his adult hand-powered tricycle off sidewalk at a particular point not proximately caused by City's failure to make the curb accessible to the disabled but by plaintiff's independent choice to leave the sidewalk at that point). These two cases, however, are not persuasive in the context of the present case as both involve mere negligence on the part of the respective defendants which caused harm only because of the unforeseen intervening negligence of those injured. Shaw does not claim that defendants were merely negligent, but that defendants engaged in the willful wrong of knowing misrepresentation. Moreover, plaintiff alleges that defendants obviously intended that this misrepresentation would prevent the importation of genuine Rolex watches by others, with resulting economic loss to the others, either through their abstention from such importation or through the seizure of their watches if such importation was attempted. Thus the latter type of loss, which actually resulted, was clearly foreseeable and, indeed, intended. That Rolex could not fore-

---

2. Rolex argues that Shaw was not a competitor of Rolex based on a prior Opinion and Order in which this Court ruled that Shaw could not claim an injury to his "business" under RICO because he failed to demonstrate the requisite intention and preparation to enter the business, although he had alleged an injury to his "prop-

erty," the seized watches. *See Shaw v. Rolex*, 673 F.Supp. 674, 680 (S.D.N.Y.1987). While Shaw may not have been able to allege an injury to his business, at least with respect to the watches at issue, he was a potential competitor with the defendants.

see the particular type of injury which resulted—i.e. it could not have known whether plaintiff would refrain from importing the watches or would attempt to do so— does not absolve Rolex of responsibility for its allegedly fraudulent representations.

Rolex also directs this Court's attention to *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249 (7th Cir.1989), in which the plaintiffs alleged that the defendants had violated RICO by engaging in a series of mail and wire frauds relating to plaintiffs' purchase of a home constructed on soil not suitable for building. However, the plaintiffs had been informed by the builder of the soil's unsuitability and had decided nonetheless that the builder should continue construction. One basis for the district court's grant of summary judgment in defendants' favor was its ruling that plaintiff's injury was not proximately caused by defendants' conduct in failing to disclose the results of test-boring because the plaintiff was aware of the actual soil condition before the home was built. The appellate court, affirming the district court decision on this ground based on plaintiffs' failure to dispute this portion of the holding on appeal, noted that "a person who discovers the truth may not claim that a defendant's misrepresentation or omission harmed him." *Id.* at 1253; *see also* W. Prosser, *The Law of Torts*, § 108, p. 714 (4th ed. 1971) ("If it appears that [the plaintiff] knew the facts, or believed the statement to be false ... it cannot be regarded as a substantial cause of [the plaintiff's] conduct.").

While this case is similar to the instant case in that both involve fraud, it differs from the instant case in an important respect. In *Reynolds*, the alleged fraud, which involved a failure to disclose material facts relating to the soil conditions, was cured when the plaintiffs learned of the actual soil conditions. The plaintiffs could suffer no damage from the lack of disclosure after they learned the material information and decided nevertheless to proceed. In this case, by contrast, the alleged fraud involved an affirmative act of misrepresentation, which was not cured by Shaw's knowledge of the fraud because Shaw was still unable to import his watches. While arguably it may have been more appropriate and prudent for Shaw to challenge the allegedly improper recordation by way of an administrative proceeding, *see* 19 U.S.C. §§ 1514, 1516; *J. Atkins Holdings Ltd. v. English Discounts, Inc.*, 729 F.Supp. 945 (S.D.N.Y. 1990), it was not implausible for Shaw to believe that he would be able to import the watches despite the recordation by showing the falsity of the representation on which it was based. Indeed, as previously noted, this was one of the possible consequences which was reasonably foreseeable.

For the foregoing reasons, the Court concludes that Shaw's decision to import the watches despite knowledge of the recordation did not break the chain of causation between the alleged fraud and the injury suffered by plaintiff.

## III. Service

Montres asks this Court to dismiss the complaint against it based on Shaw's failure to serve process upon Montres within 120 days after filing under either Rule 4(j) or 42(b), Fed.R.Civ.P. Shaw filed this action on June 30, 1986. In 1986, Rolex Watch, U.S.A. Inc. and Rolex Industries, Inc., both New York corporations and named defendants, were served with a copy of the summons and complaint. No service was attempted on Montres, a Swiss corporation and named defendant, until September 1989, when Shaw left a copy of the summons and complaint at the office of Rolex Watch, U.S.A., Inc. in New York City.

■ Rule 4(j) provides:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice ... This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

Shaw argues that the 120–day limit of Rule 4(j) is inapplicable in this case because the 120–day period for service of the summons after filing does not apply to service abroad. However, the Second Circuit Court rejected this same argument in *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737 (2d Cir.1985). The plaintiff in *Montalbano* attempted to serve a Japanese corporation by leaving a copy of the summons and complaint with the corporation's Pennsylvania distributor. The Court of Appeals explained that:

> Subdivision 4(j), with its foreign country exception to the 120–day period for service, is simply inapplicable here, because [the plaintiff] never attempted to serve process in a foreign country under subdivision (i); the 120–day time limit imposed by Rule 4(j) seems therefore perfectly proper ...

*Montalbano* was subsequently referred to in *Gordon v. Hunt*, 116 F.R.D. 313 (S.D.N.Y.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988), in which the plaintiff attempted to serve a foreign domiciliary who was temporarily in the United States. The district court found Rule 4(j) inapplicable because the untimely service on which the motion was based took place in the United States. *Id.* at 318, n. 17.

Thus, because service in this case was made on Montres in the United States through Rolex Watch U.S.A., Inc., the 120–day limit is clearly applicable. In accordance with Rule 4(j), this Court must determine whether there is "good cause" for Shaw's failure to serve Montres in a timely fashion.

■ Shaw opposes Montres' motion to dismiss on the ground that "service upon a Swiss corporation was extremely difficult, if not prohibitive." *See* Plaintiff's Memorandum of Law in Opposition to Defendant Montres, Rolex S.A.'s Motion to Dismiss at 2. Montres, because it is a Swiss corporation, could be served in Switzerland only by means of letters rogatory, which requires application to the court in which the action is pending, the U.S. Department of State and a Swiss Court. *See R.M.B. Electros-*

*tat, Inc.*, No. 82–1844, 1983 WL13711 (E.D. Pa.1983).

Shaw's position is untenable for two reasons. First, even if service on a Swiss corporation may be an arduous and time-consuming process, Shaw was under the obligation to serve Montres in accordance with applicable law. The fact that service of process may be difficult in no way acts as "good cause" for failure to serve. It is undisputed that Shaw did not undertake even the first step in the process of serving Montres abroad.

Second, the difficulty of service in Switzerland became irrelevant when this Court, in an Order and Opinion dated November 1987, dismissed all of Shaw's claims except the RICO cause of action relating to the eight watches seized. RICO section 1965(d) provides:

> All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

While section 1965(d) has been construed to authorize nationwide service of process, *see e.g. Rolls–Royce Motors, Inc. v. Charles Schmitt Co.*, 657 F.Supp. 1040, 1055 (S.D.N.Y.1987), it has been judicially established that it does not provide for international service. *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith*, 709 F.Supp. 1279, 1285 (S.D.N.Y.1989); *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F.Supp. 1453, 1460 (E.D.N.Y. 1984), *aff'd*, 832 F.2d 1325 (2d Cir.1987). "[S]ince effective service is a prerequisite to the exercise of jurisdiction, any foreign party against whom a RICO claim is asserted must be served with process in this country." *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 564 (S.D.N.Y.1985). Thus, when Shaw's action was reduced to a single claim based on RICO, he could not serve Montres outside the United States.

■ Shaw's complete failure to justify the delay warrants dismissal under Rule

4(j), Fed.R.Civ.P.[3] Shaw did not attempt service until more than three years after the complaint was filed. Shaw did not take a single step to effect timely service abroad. If Shaw believed, as he indicated in his memorandum in opposition to Montres' motion, that Rolex Watch was Montres' agent for service of process, he could have served Montres through Rolex Watch pursuant to Fed.R.Civ.P. 4(d)(3) at any time.[4] While this Court expresses no view as to whether prejudice to the defendant is an appropriate factor to consider when a plaintiff fails to offer a legitimate reason for delay, it notes that Montres asserts that Rene Dentan, a named defendant and President of Rolex Watch, U.S.A. at the time of the recordation, has died and therefore cannot be deposed by Montres. Although the claim against Montres is dismissed without prejudice under Rule 4(j), it appears that a new complaint against Montres would be barred by RICO's four-year statute of limitations. *See Burks v. Griffith*, 100 F.R.D. 491, 492–93 (N.D.N.Y. 1987). Rule 4(j), however, makes no exception for cases where refiling would be time-barred. *See Delicata v. Bowen*, 116 F.R.D. 564 (S.D.N.Y.1987).

## CONCLUSION

For the above-stated reasons, Rolex's Rule 12(c) motion is denied and the complaint is dismissed without prejudice against Montres pursuant to Rule 4(j).

SO ORDERED.

---

**3.** Shaw asserts that attempts to serve Andre Heiniger, presumably as corporate representative of Montres, during his trips to the United States proved unsuccessful. In addition to failing to present this evidence in the form of an affidavit or other competent evidence, *see In re City of Philadelphia Litigation*, 123 F.R.D. 512, 514 (E.D.Pa.1988), Shaw fails to allege the number of attempts it made to serve Heiniger, the form of those attempts, or the reason those attempts were unsuccessful. Shaw's assertion is therefore insufficient to satisfy the rule.

**4.** For this reason, this Court finds it unnecessary to address whether, as Shaw claims, it could not serve Montres through its American subsidiary until *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (American subsidiary of a foreign corporation could be served with process pursuant to state law without violation of the Hague convention). Moreover, if Shaw had believed that *Schlunk* would greatly simplify service, it would have been to his benefit to request an extension of his time to serve pursuant to Fed.R.Civ.P.Rule 6(b).